RECEIVED
AFTER 4:30 P.M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| BERNARD J. MULLEN, ) | No. A05-060 CR (JKS) |
| ) | |
| Defendant. ) | |

## MOTION TO ACCEPT LATE
## SENTENCING MEMORANDUM FOR THE DEFENSE

COMES NOW the Defendant, Bernard J. Mullen, by and through his attorney of record REX LAMONT BUTLER AND ASSOCIATES, INC., and hereby asks the Court to accept his Sentencing Memorandum For The Defense four days late. Mr. Mullen relies on the attached affidavit of counsel to support his motion for late-filing.

Dated this 15th day of December, Anchorage, Alaska.

_____
Rex Lamont Butler, Esq. ABA:830105
Counsel for Bernard Mullen

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct
copy of the foregoing has been forwarded
by hand to the U.S. Attorney's Office, 222 W.
7th Avenue, Room 253, Anchorage, Alaska, 99513-7567,
and to U.S. Probation / Pretrial Services, 222 W. 7th Avenue,
#48, Room 156, Anchorage, Alaska, 99513-7562 on this 15th day
of December, 2005.

_____
Rex Lamont Butler #8310105
REX LAMONT BUTLER AND ASSOCIATES, INC.
Counsel for Bernard Mullen

REX LAMONT BUTLER & ASSOCIATES, INC.
Attorneys and Counselors at Law
Signature Building
745 West Fourth Avenue, Suite 300
Anchorage, Alaska 99501
Tel: (907) 272-1497
FAX: (907) 276-3306



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| BERNARD MULLEN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) Case Number A05-060 Cr. (JKS) |

AFFIDAVIT OF REX LAMONT BUTLER

| | |
|---|---|
| STATE OF ALASKA | ) |
| | ) |
| THIRD JUDICIAL DISTRICT | ) |

REX LAMONT BUTLER, being first duly sworn upon oath, deposes and states as follows:

1. that I am counsel of record for the Defendant in this case, Bernard Mullen;

2. that sentencing is scheduled for 9:00 a.m. on Monday, December 19, 2005;

3. that the Sentencing Memorandum For The Defense is now 3 days late;

4. that I was scheduled for trial in a felony Robbery case, <u>State of Alaska v. Aaron Furber</u>, 3AN-S04-337 Cr., for this week, however, the case has since been rescheduled;

5. that Mr. Mullen's family only recently retained Mark Rosenbaum as co-counsel to assist in preparing the Sentencing Memorandum For The Defense;

Affidavit of Counsel
Page 1

REX LAMONT BUTLER & ASSOCIATES, INC.
Attorneys and Counselors at Law
Signature Building
745 West Fourth Avenue, Suite 300
Anchorage, Alaska 99501
Tel: (907) 272-1497
FAX: (907) 276-5306

6. that the research, writing, and collaboration with co-counsel took longer than anticipated, and;

7. that Defendant attaches hereto a Memorandum Opinion in U.S. v. Carvajal 2005 WL 476125(S.D.N.Y.) regarding a career offender sentencing since Booker/Fanfan, and,

8. that accepting the late filing of the Sentencing Memorandum For The Defense should not prejudice the government's case.

Further your affiant sayeth naught.

DATED at Anchorage, Alaska, on this 15th day of December, 2005.

_____
Rex Lamont Butler, ABN #8310105

SUBSCRIBED AND SWORN to before me on this 15th day of December, 2005.



_____
Notary Public in and for Alaska
My commission expires: 6/21/07

Affidavit of Counsel
Page 2

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 476125 (S.D.N.Y.)
**(Cite as: 2005 WL 476125 (S.D.N.Y.))**
<KeyCite Citations>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
UNITED STATES OF AMERICA, Plaintiff,
v.
Joseph CARVAJAL Defendant.
No. 04 CR 222AKH.

Feb. 22, 2005.

*MEMORANDUM EXPLAINING SENTENCING*

HELLERSTEIN, J.

**\*1** The United States Supreme Court recently held that the provisions of the federal sentencing guidelines that required mandatory sentencing violated defendants' Sixth Amendment rights to jury trials, but that, with such provisions excised, the guidelines were constitutional. *United States v. Booker,* 125 S.Ct. 738 (2005). The Supreme Court provided a methodology, requiring district judge first to apply the guidelines, and then review that application in relation to general principles of sentencing provided by 18 U.S.C. § 3553(a), thereby arriving at a "just punishment." *Id.* at 744.

On January 19, 2005, I sentenced Joseph Carvajal to 168 months of custody, followed by 3 years of supervised release. I write to describe my calculations under the guidelines, and my departures from the strictures of Career Offender punishments that I considered not entirely applicable to Carvajal's offenses and criminal history.

*Facts Relevant to Sentencing*

A jury found Joseph Carvajal guilty of conspiracy to make and distribute counterfeit United States currency, of passing such currency in an amount totaling $6,680, and of conspiracy to distribute crack cocaine. The jury found him not guilty of substantive counts of distributing crack cocaine, of possessing a firearm in furtherance of a drug trafficking crime, of illegally possessing a firearm, and of destroying evidence to avoid its seizure.

Carvajal was on parole from a New York State conviction when he committed his crimes. Following his state court conviction, he lost his apartment and was taken in by his brother, Robert. Joseph Carvajal then acquired a printing device and paper to produce counterfeit United States currency. Mr. Carvajal stored the printing device in Robert's apartment, sometimes moving it to another apartment in the same building in which a crack-addicted confederate resided. In order to pass off the fraudulent currency, Joseph Carvajal enlisted the services of a girlfriend who was heavily addicted to crack, the confederate who lived in Robert's building, and two other crack addicts. Joseph paid them with small amounts of crack cocaine purchased with the counterfeit currency, and gave his aides permission to sleep in Robert's apartment whenever they needed a place to stay. One of his enlisted assistants testified for the Government at Joseph Carvajal's trial.

Joseph Carvajal was 34 years old, single, and without dependents when I sentenced him. He seems to have had no gainful

employment during his adult life. In 1989, at age 18, he pleaded guilty and was convicted of attempted robbery by the New York Supreme Court, Queens County; Carvajal was subsequently sentenced to an indeterminate term of 28 months to seven years imprisonment. A year later, in 1990, he pleaded guilty and was convicted again of attempted robbery by the same court, and sentenced to an indeterminate term of four to eight years imprisonment. In 1991, presumably before beginning his sentence, he pleaded guilty and was convicted once again of attempted robbery. This time, it was the New York Supreme Court of Kings County that sentenced him, again to an indeterminate term of four to eight years.

*2 Carvajal presumably then served his prison term, followed by parole. The probation report states that he absconded from parole, twice had his parole revoked, and finally was discharged in May 2002. Within two years, he committed the offenses of which the jury in this court found him guilty.

The probation report also reveals other crimes committed by Joseph Carvajal: reckless endangerment, distribution of cocaine, possession of a forged instrument, and criminal possession of marijuana. Between ages 18 and 34, there is little else shown for him than the crimes he committed and the jail terms he served.

### Related Sentences

Joseph Carvajal's confederates each pleaded guilty to the offenses respectively charged against them. Following the Sentencing Guidelines, pre-*Booker /Fanfan,* I sentenced Steven Acosta to 15 months custody followed by three years of supervised release; Linda Hodge to nine months custody followed by three years of supervised release; Todd Blunt to 10 months custody followed by three years of supervised release; and Robert Carvajal to time served, 3 weeks custody, followed by 3 years of supervised release. The defendants were each required to undertake programs to free them of their addictions, and, in addition, Robert Carvajal was required to devote a significant amount of time to community service, particularly in relation to the Vera Institute of Justice, a non-profit organization assisting former convicts in their adjustments to civilian society. Robert Carvajal was also likely to lose his FHA-sponsored apartment.

### *Guidelines Analysis: Joseph Carvajal*

Post-*Booker /Fanfan,* as was done pre-*Booker /Fanfan,* the sentencing begins with an analysis under the Guidelines. The Guidelines, although no longer binding on the district judge, reflect an accumulated wisdom on sentencing. The "Sentencing Commission remains in place writing guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly." *Booker,* 125 S.Ct. 738, 767 (2005) (Breyer, J.).

As United States District Judge Paul Cassell wrote in a comprehensive and thoroughly-researched opinion:

> Congress' creation of the Commission and subsequent approval of the Commission's Guideline's provide strong reason for believing that Guidelines sentences satisfy the congressionally-mandated purposes of punishment. It would be startling to discover that while Congress had created an expert agency, approved the agency's members, directed the agency to promulgate Guidelines, allowed those Guidelines to go into effect, and adjusted those Guidelines over a period of fifteen years, than the resulting Guidelines did not well serve the underlying congressional purposes. The more likely conclusion is that the Guidelines reflect precisely what Congress believes is the punishment that

will achieve its purposes in passing criminal statutes.
*United States v. Wilson,* ___ F.Supp.2d ___ (D.Utah 2005).

**\*3** The base level for counterfeiting offenses is nine, and is adjusted upwards two levels for such offenses that pass more than $5,000 and less than $10,000. U.S.S.G. § 2B5.1 (2004). Since defendant had manufactured or produced the counterfeit money, and because he possessed a counterfeiting device, an additional upwards adjustment of two levels is provided, with a minimum level of 15. *Id.,* § 2B5.1 (b)(3). The Guidelines, in providing this 15 level minimum, reflect the common sense wisdom that one who possesses the means to make as much counterfeit money as he believes he can pass without being detected displays a certain indifference to, or disdain of, law-abiding behavior that should be punished, presumptively, by a custodial range relating to level 15, to custody, that is, between 18 and 24 months, and more if he has a criminal history.

Joseph Carvajal employed five others in his criminal conspiracy to counterfeit United States currency, and paid them with crack cocaine purchased by passing the fraudulent money and other consideration. The Guidelines provide an upward adjustment of four levels for one who was a leader or supervisor of a criminal activity involving five or more others, or if the criminal activity was otherwise extensive. U.S.S.G. § 3B1.1 (2004). A defendant's role in the offense is an important consideration of punishment, in determining "the *real conduct* that underlies the crime of conviction." *Booker,* 125 S.Ct. at 759 (Stevens, J.). In the case of a defendant who is deemed to be a leader of an extensive criminal activity, a four-level upwards adjustment in relation to a 15-level presumptive punishment for the offense he committed appears reasonable. The adjustments for Carvajal thus far sum to level 19. The Guidelines provide a range of custodial punishment of 30-37 months for level 19, and more if there is requisite criminal history.

The preceding adjustments are fact-based, requiring an analysis of the facts and circumstances of defendant's criminal conduct. My analysis was facilitated by my having presided over the trial, and because my dialogue with counsel produced consensus on the applicability of the adjustments. A hearing in order to find the facts relevant to sentencing adjustments was not necessary. *Cf. United States v. Fatico,* 579 F.2d 707 (2d Cir.1978).

Justice Breyer's rulings in *Booker* comment on the historic sentencing procedures of judges which involved acquiring the relevant facts from all kinds of sources, and making sentencing evaluations without the necessity of formal findings. "Judges have long looked to real conduct when sentencing. Federal judges have long relied on a presentence report, prepared by a probation officer, for information (often unavailable until *after* the trial) relevant to the manner in which the convicted offender committed the crime of conviction." *Booker,* 125 S.Ct. at 760. These procedures occurred in an age that was both pre-Guidelines and pre-*Booker/ Fan Fan.* However, the lack of formal fact-finding procedures led to wide disparities in sentencing, of which Congress disapproved. 28 U.S.C. § 991(b)(1)(B) (one purpose of the Federal Sentencing Guidelines is to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.")

**\*4** The majority in *Booker* held that the part of the Sentencing Act making the Sentencing Guidelines mandatory is unconstitutional. I

believe that this holding requires the District Judge to be skeptically careful of unarticulated facts and considerations subsumed in a sentence. The structure of factual hearings and formal findings are necessary if we are to conform our conduct to the Sentencing Reform Act, as we must, and if we are to respect the rationale that led the United States Supreme Court to invalidate the mandatory quality of the Act, but to uphold the Act in all other respects.

With these considerations in mind, I shall continue to utilize factual hearings, and to base my findings on the quality and reliability of evidence.

In addition to the counterfeiting offenses for which he was convicted, Joseph Carvajal was found guilty of conspiracy to distribute crack cocaine. He was found not guilty of the substantive counts of making actual distributions.

Conspiracies to distribute narcotics are considered narcotics offenses. 21 U.S.C. § 846 (2004). The appropriate offense level for cocaine base without any particular weight is 12. U.S.S.G. § 2D1.1(c)(14). The Guidelines provide for a three-level downward adjustment in situations where the acts necessary for completing a substantive crime did not occur. U.S.S.G. § 2X1.1(b)(2). The jury found Carvajal guilty of the conspiracy only, acquitting him of the substantive offenses of distributing crack cocaine. Therefore, over the government's objection, I ruled that the downward adjustment applies, bringing the offense level to nine. I declined to accept the Government's argument that, nonwithstanding the jury's verdict that Carvajal was not guilty of actually distributing crack, I should nevertheless consider that the acts necessary for completing the substantive crime were proved by a preponderance of the evidence. *Cf, United States v. Watts,* 519 U.S. 148 (1997).

Under the Sentencing Guidelines, when a defendant is convicted of two or more unrelated offenses, the District Judge uses a "groupings" analysis to determine whether the counts fall into the same group for the purposes of sentencing, and whether there should be an upward adjustment to the sentence. U.S.S.G. § 3D1.2. According to this groupings analysis, an offense that is nine or more levels below the more serious adjusted offense level is not counted. U.S.S.G. § 3D1.4(c). The Guidelines suggest that the additional aspect of criminality should be considered by fixing punishment at the higher end of the Guidelines range, *id,* that is, at the higher end of level 19. However, because of the different, and far more serious, adjustment provided by the Career Offender sections of the Guidelines, Carvajal's putative sentence was to be adjusted well beyond level 19.

Joseph Carvajal was convicted of a narcotics offense--conspiracy to distribute crack cocaine. Since he was over 18 years of age, and was previously convicted at least twice of a violent crime (attempted robbery), he is to be punished as a Career Offender. U.S.S.G. § 4B1.1. Because the statutory maximum for the crime conspiracy to distribute crack cocaine is 30 years, *see* 21 U.S.C. § 841, the Guidelines offense level is 34, and the Criminal History is to be considered at level VI. U.S.S.G. § 4B1.1(b)(B). The indicated level of custodial punishment is 262 to 327 months. U.S.S.G. § 5A. The government advocated this level of custodial punishment.

*5 One could argue that punishing Carvajal at Criminal History Level VI overstates his level of criminal history. Carvajal's prior convictions for attempted robbery to arrive at the Career Offender designation, add to 17 points, well beyond criminal history level VI

(13 points or greater). If one were to deduct the 6 points used for the two prior convictions of attempted robbery, defendant would have an adjusted criminal history of 11. A criminal history level of 11 equates to a Criminal History category of V, equating to a range of custodial punishment of 235-293 months at Offense Level of 34. Under the Guidelines, departures for overstatements of criminal history for Career Offenders are limited to one category, U.S.S.G. § 4A1.3(b), that is, to Criminal History category IV, equates to a degree of custodial punishment of 210 to 262 months. The government objected to a departure below a range of custodial punishment of 210 to 262 months.

The district judge, in sentencing, is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" by Congress. 18 U.S.C. § 3553(a). The judge is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*., and "the need for the sentence imposed" to satisfy specified criteria:
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> *Booker,* 125 S.Ct. at 770 (App.A) (Breyer, J.)

A sentencing of Carvajal to the range of custodial punishment appropriate to Offense Level 19 and Criminal History Category VI would have resulted in a sentence between 63 to 78 months. A sentence in this range would have been sufficient to reflect the circumstances of the offense but, because of Career Offender calculations, not Carvajal's history and characteristics. Such a sentence would satisfy some, but not all, of the criteria of Section 3553(a)--the seriousness of the offense, respect for the law, and just punishment for the offense. But the public would not be protected sufficiently from further crimes of the defendant, for Carvajal has shown that prison terms have not ended his recidivist patterns. And thus punishment beyond Level 19 and Category VI appears necessary for the statutory goals to be satisfied.

The Career Offender guidelines satisfy these omissions, and provide the more serious punishment appropriate to Carvajal's recidivism. But they are excessive, in light of the nature of his recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria. A sentence that satisfies only the Guidelines would be "greater than necessary, to comply with the purposes" set forth in the statute. I have followed the Career Offender provisions in such a way as to accord the jury's findings proper respect. In other words, the punishment is responsive to the gravamen of Joseph Carvajal's criminality found by the jury, that is, counterfeiting, not narcotics distribution.

*6 I believe that the concept of just punishment requires a further departure below Offense Level 34 and Criminal History Category V. In my opinion, a 168 month (14-year) term of custodial punishment of 168 month would be just punishment. Joseph Carvajal is 34 years old, and will be 48 years old when he emerges from prison (or 15% less if he wins reductions for good behavior).

Rehabilitation is also a goal of punishment.

18 U.S.C. § 3553(a)(2)(D). That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment.

For the reasons stated, I sentenced Joseph Carvajal to 168 months custody followed by 3 years supervised release.
  SO ORDERED.

Not Reported in F.Supp.2d, 2005 WL 476125 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

. 2005 WL 1803216T1 (Trial Motion, Memorandum and Affidavit) Memorandum Explaining Sentencing (Feb. 17, 2005)

. 1:04cr00222 (Docket) (Mar. 10, 2004)

END OF DOCUMENT