LAW OFFICES OF MARK A. ROSENBAUM
4940 Byrd Lane, Suite 100
Anchorage, Alaska 99502
(907) 243-2400

REX LAMONT BUTLER &
ASSOCIATES, INC.
745 West Fourth Ave., Ste. 300
Anchorage, Alaska 99501
(907) 272-1497



LODGED
DEC 15 2005

FILED
DEC 16 2005
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. A05-060 CR (JKS) |
| ) | |
| Plaintiff, ) | SENTENCING MEMORANDUM |
| ) | FOR THE DEFENSE |
| vs. ) | |
| ) | |
| BERNARD J. MULLEN, ) | |
| ) | |
| Defendant. ) | |

COMES NOW Defendant Bernard J. Mullen, by and through the Law

Offices of Mark A. Rosenbaum, and hereby submits the following sentencing

memorandum and, if necessary, motion for downward sentencing departure.

I. **INTRODUCTION**

Bernard Mullen was arrested in Anchorage, Alaska, on June 24, 2005, two

days following return of the indictment which charged him in two counts. Despite

facing enhanced penalties pursuant to 21 U.S.C. § 851, Mr. Mullen was released on

30

September 14, 2005, upon, amongst other conditions, his promise to voluntarily return to custody by noon on September 18, 2005. And he did, but not before selling his business, Top of the Line Beauty Supply, and donating the entire inventory of goods and supplies (estimated value over $50,000) to the Hurricane Katrina Fund. The next day, Monday, September 19, 2005, Mr. Mullen pleaded guilty to the indictment in accord with the terms of a plea agreement.

In that plea agreement, the government provided a good faith estimate of the applicable sentencing guideline range as 140 to 175 months imprisonment, and further stated,

> **"The sentence to be imposed under the terms of this plea agreement will serve to adequately protect the public and reaffirm societal norms, provide for deterrence to the defendant and others, and provide the defendant an opportunity for rehabilitation."**
> Plea Agreement, Section IV, p. 16.

The presentence report (PSR), however, calculated the applicable guideline range as being 262 to 327 months imprisonment under U.S.S.G. §4B1.1. Given that the qualifying convictions for this career offender guideline calculation were listed in the pretrial services report dated June 27, 2005, the only reasonable explanation for the 87% increase over the plea agreement calculation is that counsel for

the government and counsel for the defendant considered the career offender provisions, but concluded, as the court did in *United States v. Moreland*, 366 F.Supp.2d 416 (S.D. W.Va. 2005), that factors such as the lack of violence in defendant's record; the factual underpinnings of his prior drug offenses; his attempts to aid the authorities; his desire for drug rehabilitation; and post-offense rehabilitation and remorse, amongst others, dictated the outcome under 18 U.S.C. § 3553(a), trumping the career offender guideline in providing the defendant with a good faith sentencing estimate.

However, with the plea agreement additionally containing the government's certification quoted above as part of compliance with Local Criminal Rule 11.2(D), the defendant also reasonably believed, as did both counsel, that a sentence of 140 to 175 months was compliant with the requirements of 18 U.S.C. § 3553(a), independent of the non-binding nature of the guideline estimate.

It is the defense position in this memorandum, based upon the government's earlier plea agreement representation and the authorities cited below, that the sentencing range of 140 to 175 months meets the criteria set by § 3553(a), and, if necessary, a downward sentencing departure under U.S.S.G. §5K2.0 is appropriate to set "the applicable guideline range" (Plea Agreement, p. 14) before even considering any others that might be argued by the parties. See *United States v. Moreland, supra.* (in federal narcotics trafficking case, 10 years statutory mandatory minimum followed by eight years' supervised release sufficient sentence where career offender guideline

yielded sentencing range of 360 months to life); see also, *United States v. Laurence*, 916 F.2d 553, 554-55 (9th Cir. 1990); *United States v. Reyes*, 8 F.3d 1379 (9th Cir. 1993) (even pre-*Booker*, court may depart under career offender guideline).

II. **THE COURT SHOULD CONSIDER THE NOW ADVISORY GUIDELINES ALONG WITH ALL RELEVANT FACTORS UNDER 18 U.S.C. §§ 3553(a) AND 3661 IN DETERMINING A REASONABLE SENTENCE THAT IS NO GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF SENTENCING**

As the Court no doubt is well aware, in *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. See *Booker*, 125 S. Ct. at 757 (2005) (Breyer, J.). "So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory." 125 S. Ct. 738, 757. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . . , but it permits the court to tailor the sentence in light of other statutory concerns as well." *Id*.

4

After *Booker*, federal sentencing is vastly different. The Ninth Circuit has characterized it as a ""sea change" in the federal sentencing regime.'" *United States v. Ameline*, 400 F.3d 646, 652 (9th Cir. 2005), (opinion prior to opinion en banc). Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as only one of many factors in determining a sentence *no greater than necessary to achieve the goals of sentencing* set forth in Section 3553(a)(2). The PSR recommends a guideline range of 262 to 327 months imprisonment. Defendant submits that, in accord with the government's plea agreement assessment, a sentence within that range would be far greater (at least 87%) than necessary to achieve the goals of sentencing, in violation of § 3553(a). Several factors exist, independent of the guideline range calculation, which warrant a reasonable sentence below that calculated in the PSR. See *United States v. Moreland*, 366 F.Supp.2d 416 (S.D. W.Va. 2005).

### A.  The § 3553(a) Sentencing Mandate

Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a) and the "factors" to be considered in fulfilling that mandate. The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(A) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment);

(B) deterrence;

(C) incapacitation (to protect the public from further crimes); and

(D) rehabilitation (to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner).

See, *United States v. Phelps*, 366 F.Supp.2d 580, 587 (E.D. Tenn. 2005)

The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a). Rather, it sets an independent limit on the sentence a court may impose. See *United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989). Since § 3553(a) requires a sentence to be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if within guideline range. *Id.*

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors

listed in Section 3553(a). These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the kinds of sentence available;" (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a)(1), (a)(3), (a)(5)-(7). Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

In addition to considering factors under § 3553(a), sentencing courts have a duty to consider many factors that the Guidelines specifically exclude from consideration. As noted by the Second Circuit, "[p]rior to *Booker/Fanfan*, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met. Now, with the mandatory requirement of following the Guidelines lifted, the duty imposed by section 3553(a) to 'consider' numerous factors acquires renewed significance." *United States v. Crosby*, 397 F.3d at 111 (2nd Cir. 2005)

7

For example, under 18 U.S.C. § 3661 "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". *United States v. Phelps*, 366 F.Supp.2d 580, 592-93 (E.D. Tenn. 2005). This statutory language overrides the now-advisory policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *Id.*

Accordingly, this Court should consider all factors – even factors deemed "not ordinarily relevant" by the formerly mandatory Guidelines in determining the type of sentence that satisfies the sentencing mandate of § 3553(a).

**B.    The Weight to Be Given to the Guidelines**

Significantly, the Guidelines should be just one of many factors this Court reviews when determining the ultimate sentence to impose and they should be given no more weight than any other single factor considered under § 3553(a). *United States v. McDaniel*, 398 F.3d 540, 550-51 (6th Cir. 2005) (holding that after *Booker*, the guideline range is merely advisory, and the district court has discretion to impose a reasonable sentence outside the range under appropriate circumstances.) Although this Circuit has applied the holding in *Booker* to many cases on appeal, it has not offered

explicit guidance on sentencing procedure post-*Booker*. It has, however, expressly followed the approach and rational of the Second Circuit. *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (following the rationale in *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005)).

The first two published district court sentencing opinions after *Booker* presented two different views regarding how much weight should be given to advisory guidelines. The day after *Booker* was decided, a district court in Utah ruled that the court would continue to give "considerable weight" or "heavy weight" to the sentencing guidelines, deviating from the applicable range only "in unusual cases for clearly identified and persuasive reasons." *United States v. Wilson*, 350 F. Supp. 2d 910, 912, 925 (D. Utah Jan. 13, 2005). See also *United States v. Wilson*, 355 F. Supp. 2d 1269 (D. Utah Feb. 2, 2005) (reaffirming position and responding to critics of the first *Wilson* decision).

The court in the Eastern District of Wisconsin disagreed, noting that *Wilson* is inconsistent with the remedial majority in *Booker*, which "direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D. Wis. 2005). It was reasoned that while courts must consider the guidelines and give reasons for sentences outside the range, "in doing so courts should not follow the old 'departure'

methodology." *Id.* The court went on to state:

> "The guidelines are not binding, and courts need not justify a sentence outside of them by citing factors that take the case outside the "heartland." Rather, courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as that the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.
> *United States v. Ranum*, 353 F. Supp. 2d at 987.

Similarly, in *United States v. Issa M. Jaber*, 362 F.Supp.2d 365 (D. Mass. 2005), the court provided an in-depth analysis of why the *Wilson* approach is wrong "both as a matter of law and fact." *Id.* at 371. The court explained that "the *Wilson* method comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*," *id.*, and that "*Wilson* overstates the case for deference to the Commission, particularly in individual cases." *Id.* at 372. See also *United States v. Myers*, 353 F. Supp. 2d 1026 (S.D. Iowa 2005) (Pratt, J.) (agreeing with *Ranum* approach and arguing that the *Wilson* approach is in error because it makes the guidelines, "in effect, still mandatory"); *United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence").

At least one district court within the Sixth Circuit has agreed with the approach in *Ranum*. *United States v. Phelps*, 366 F.Supp.2d 580 (E.D. Tenn. 2005). The court recognized that the Guidelines were merely one of many factors to consider at sentencing. Specifically, "the Court does not believe the advisory Guidelines range should be treated as a starting point or necessarily understood as representing a presumptively reasonable sentence in a given case. The Guidelines are one of a universe of factors pertinent to the Court's sentencing decisions, albeit a significant or substantial factor, and nothing in *Booker* or 18 U.S.C. § 3553(a) operates to make the advisory Guidelines range uniquely primary among those factors." *Id* at 587.

Finally, and perhaps most pertinent in this case, after *Booker*, this Court is free to consider the lack of violence in Mr. Mullen's record, the relatively minor nature of his prior drug offenses, as well as other factors, in choosing *not* to sentence him as a career offender under the Guidelines. See *United States v. Moreland*, 366 F.Supp.2d 416 (S.D. W.Va. 2005) (in federal narcotics trafficking case, 10 years statutory mandatory minimum followed by eight years' supervised release sufficient sentence where career offender guideline yielded sentencing range of 360 months to life).

Based on the foregoing, it seems clear that after considering the §§ 3553(a) and 3661 factors (including the guidelines), a sentencing court has full discretion to sentence anywhere within the statutory range. If the *Booker* Court thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the constitutionally

construed statute requires) but had generally to be followed – its opinion would surely say so. *Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other factors would violate the Sixth Amendment.

C. **Mitigating Factors to Consider in Determining a Sentence not Greater than Necessary to Achieve the Goals of Sentencing.**

In this case, several factors are present that both individually and collectively indicate that a sentence below what is contemplated by the Guidelines achieves the sentencing goals of retribution, deterrence, incapacitation, and rehabilitation. See, 18 U.S.C. § 3553(a)(2).

They are:

    **(1)**    **Lack of Violence in Defendant's Record**

    **(2)**    **Factual Underpinnings of Prior Drug Offenses**

    **(3)**    **Post-Offense Rehabilitation and Remorse**

    **(4)**    **Desire for Drug Rehabilitation**

    **(5)**    **Assistance Offered and Attempted in Aid to the Authorities**

Perhaps the most significant of these factors in this case are the last two, given the impact of following the career offender guideline calculation suggested by the PSR.

Bernard Mullen does not have the reported history of violent behavior and firearms offenses often associated dangerous career offenders. In fact, he has no such history, and to the contrary, has a demonstrated history of benevolence as shown by his donating over $50,000 worth of good and supplies to the Hurricane Katrina relief effort.

Bernard Mullen's qualifying prior drug offenses are to hand-to-hand sales to police informants, the largest of which was a "bag of white powder . . . for $400" and the rest less than $200.[1] ( PSR, ¶¶42, 43, 46.)

Under § 3553(a), the Court should impose a sentence no greater than necessary to achieve the goals of sentencing under § 3553(a)(2) – retribution, deterrence, incapacitation, and rehabilitation. As noted above, the government has already agreed that a sentence of 140 to 175 months satisfies those goals.

---

[1] In counsel's prosecutorial experience, these values represent no more than one to four gram cocaine transactions, hardly the dealings of a major trafficker, and more likely reflective of sales for personal use.

## III. THE DEFENSE POSITION

Mr. Mullen is only seeking that which he was led to believe he was bargaining for. By the government's account, the sentencing guideline range set out in his plea agreement "**. . . will serve to adequately protect the public and reaffirm societal norms, provide for deterrence to the defendant and others, and provide the defendant an opportunity for rehabilitation.**"

Nothing has occurred since that plea agreement to change that conclusion.

In sum, the Court should begin its sentencing analysis at 140 to 175 months, finding it the "otherwise applicable range", and then take into account any other bases for departure presented by the parties.

\*\*\**U.S v. Carvajal - Attached*\*\*\*

DATED: 12-15-05          Respectfully submitted,

LAW OFFICES OF MARK A. ROSENBAUM
Attorneys for Defendant

By: _____
MARK A. ROSENBAUM
Attorney-at-Law

DATED: 12-15-05

_____
REX LAMONT BUTLER
Attorney for Defendant
AK Bar # 8310105

I declare under penalty of perjury
that a true and correct copy of the
foregoing SENTENCING MEMORANDUM
FOR THE DEFENSE

was served upon

STEPHAN A. COLLINS
Assistant U.S. Attorney
222 W. 7th Ave., Rm. C-253
Anchorage, Alaska 99513

on December 15, 2005, via:

    ( ) U.S. Mail
    ( ) U.S. Mail Certified
    **(X) FAX - 12/15/05**
    (X) Hand Delivery to the USAO
    ( ) Private Messenger Service

And that a courtesy copy was provided to

USPO Barbara Burton

Executed at Anchorage, Alaska, on
December 15, 2005.

_____
Rex Lamont Butler, Esq. ABA:830105
Counsel For Bernard Mullen

15